George Westhoff, Pauline M. Whelan and Louise M. Westhoff, Plaintiffs-Appellees, v. Commonfields of Cahokia Public Water District.

Gen. No. 69–60.

Fifth District.

May 22, 1970.

Karns, Starnes, Nester & Stegmeyer, of Belleville, for appellant.

Walker & Williams, of East St. Louis, for appellees.

MORAN, P. J.

Plaintiffs advanced the sum of $4,625.53 on November 14, 1959, to the defendant for construction of water lines on property in the defendant's water district and subdivided by plaintiffs. Plaintiffs claimed in the trial court that this money was advanced to the defendant with the understanding that the defendant would return the mon-

ey within a reasonable time. After a nonjury trial, the court entered judgment in favor of the plaintiffs and against the defendant in the sum of $4,625.53. Defendant appeals.

Defendant contends there was insufficient evidence in the trial court to prove the existence of a contract which obligated the defendant to return the money advanced by the plaintiffs.

In July of 1959 George Westhoff contacted Rudy De Bourge, the defendant's manager at that time, and told him he needed water for a subdivision he owned. The manager indicated that he would advise the defendant Board of the request and determine costs and specifications. Westhoff's next contact with the water district was in August 1959, when he was told that he would have to pay $2,960. He delivered a check for that amount to the water district but it was returned because the size of the line had been increased and because the district's engineer had advised against a dead-end extension of service; the proposed line was changed from a dead end to an L-shaped connection. Westhoff disagreed with the increased size of the line and questioned the use of six-inch pipes rather than four-inch pipes.

Defendant then notified George Westhoff that it required $4,625.53 for installation of the service. Westhoff issued a certified check in that amount, dated November 14, 1959, to the water district. Prior to delivering the check, Westhoff placed an endorsement on the back of the check which contained the following language: "By endorsement of this check a lien is taken against endorsers for face amount of check payable to George Westhoff of 19 East Gooding St., Millstadt, Ill." The check was thereafter endorsed by defendant water district and countersigned by Rudy DeBourge, its manager.

Plaintiff George Westhoff testified he expected to be repaid the money he advanced within a year or two years.

Rudy DeBourge told him at the August meeting when plaintiff presented the check for $2,969 that he would get his money back. He testified, and the minutes of the defendant indicate, that in April of 1961 he was advised by defendant that he would receive the reimbursement if he signed a written agreement with the defendant. Plaintiff decided the agreement was too ambiguous and refused to sign it.

Joseph LiVigni, manager of the water district, testified that the minutes of the water district's meeting of April 12, 1961 were as follows:

> "A visitor named George Westhoff of Loretta Place Subdivision asked the Board about getting back the money he had spent to install water lines in this subdivision. . . . A lengthy discussion between Mr. Westhoff and the Board followed concerning his reimbursement for the money he paid out. He was promised orally that he would be compensated but had never signed a contract with the company and had never been offered a contract. Mr. Westhoff questioned the cost of the installation and thought perhaps the company had overcharged him about Two Thousand Dollars. Mr. Johnston (I might indicate that Mr. David Johnston is the District's Engineer) explained that the Two Thousand Dollars was for a tie in with the other line which Mr. Westhoff insisted upon at the time of the installation. Mr. Westhoff was given a standard subdivider's contract to sign and he said he would sign it only after he had studied it to determine his rights. Mr. Pessin told him as soon as he signed the contract he would start sharing in the profits (I might indicate, Your Honor, Mr. Pessin was the District's attorney at the time). Mr. Flynn said in his opinion the contract should be back-dated from the time the Board first started making contracts."

Since 1962, plaintiff has been listed in the account books of defendant under the classification "Advances in Aid of Construction" in the amount of $4,625.53. According to the testimony of one of defendant's auditors, "Advances in Aid of Construction" is a liability. Jack McKeon, an employee of the defendant's auditors, testified that the classification "Advanced in Aid of Construction" means that this money had been advanced to the defendant to help construct this water line. In 1960, plaintiff's name was not listed but there was a fixed liability, "Advances in Aid of Construction," in the amount of $12,093.14. Thereafter, plaintiff's name appeared under said liability heading in the amount of his draft advance.

There was evidence from which the court could find that both plaintiffs and defendant were in agreement that plaintiff would be repaid for his advancement. He was advised by the manager of the water district that he would receive his money back when plaintiff issued his first check. Nothing was said to plaintiff by defendant that the same would not be true as far as the second check was concerned. The minutes of the water district board meeting in April of 1961 indicated that the members of the board believed plaintiff should be compensated for his advancement. Since 1962 plaintiff has been listed in the account books of the district under the classification "Advances in Aid of Construction." There was testimony that this classification means money advanced to defendant to construct water lines. The endorsement on plaintiff's check amounted to an offer to advance construction costs for the water lines with the understanding that he would get his money back. This offer was accepted by defendant when it endorsed and deposited plaintiff's check.

██ In our opinion, there was ample evidence to establish a contractual relationship between the parties obligating the defendant to repay the advance in aid of construction made by plaintiff. The weight to be given

the testimony is a matter to be determined by the trial judge, sitting without a jury, and his findings will not be disturbed unless manifestly erroneous. People ex rel. Penrod v. Chicago & N. W. Ry. Co., 17 Ill2d 307, 161 NE2d 120. We cannot say that the court's findings here were against the manifest weight of the evidence.

For the foregoing reasons the judgment of the trial court of St. Clair County is affirmed.

Judgment affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.